IN THE DISTRICT COURT OF MUSKOGEE COUNTY
STATE OF OKLAHOMA

1. SHIRLEY MAXEY            )
                            )
        Plaintiff,           )
                            )
vs.                          )
                            )  Case No: CJ-13-315
1. MUSKOGEE COUNTY COMMUNITY )
   ACTION FOUNDATION, INC., and )
2. JAMES EZZELL              )
                            )
        Defendants.         )

## PETITION

Shirley Maxey, for her *Petition* against the Muskogee County Community Action Foundation, Inc., and James Ezzell alleges and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Defendant Muskogee County Community Action Foundation, Inc. ("MCCAF"), also known as Muskogee County Community Action Partnership ("MCCAP"), is an Oklahoma not-for-profit corporation in Muskogee, Oklahoma. MCCAF's stated mission is "To plan, conduct and administer a community action program in accordance with the purpose and provisions of the Community Services Block Grant Act of 1981, as amended." The acronyms MCCAF and MCCAP may be used interchangeably within the instant action, but all refer to this defendant.

2. Defendant James Ezzell is a resident of Tulsa County. At all times relevant hereto, Ezzell was employed by MCCAF in Muskogee County.

3. Plaintiff Shirley Maxey is a resident of Muskogee County. Maxey, a black female who has aged gracefully for longer than 40 years, was employed by MCCAP in Muskogee County during the times discussed in this *Petition*.

4. Ezzell was Maxey's supervisor at MCCAP. While acting in this supervisory role, Ezzell committed numerous tortious acts against Maxey, all of which took place at MCCAP.

5. At all times mentioned herein, MCCAF was an employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Civil Rights Act"), Title 42 U.S.C. § 2000e-2(a), the Age Discrimination in Employment Act ("ADEA"), Title 29 U.S.C. § 631(a), and as the term is defined by the Equal Employment Opportunity Commission ("EEOC").

6. Venue is proper in Muskogee County. Substantial portions of the events giving rise to the plaintiff's causes of action as claimed herein occurred in Muskogee County. This Court has jurisdiction over the subject matter of this lawsuit and the two defendants named herein.

7. The plaintiff has been generally damaged in an amount within the jurisdictional limits of the Court.

8. Though the factual background and causes of action are laid out separately, this *Petition* is intended to be read as a whole, each segment incorporating all others.

## FACTUAL ALLEGATIONS

9. While Maxey was employed with MCCAP, she advanced to a position as a site manager over the Douglass Center, where they provided a large number of meals for those in need.

10. Ezzell was Maxey's supervisor. Maxey's duties required her to report to and work directly with Ezzell on a regular basis.

11. Ezzell made a regular practice of acting with prejudice regarding gender, age and race and other issues.

12. In October of 2011, Ezzell came up behind Maxey and thrust his hips into her rear end in a sexual manner, twice. On the second time, being certain that there was no mistake or inadvertence in Ezzell's actions, Maxey expressed her extreme displeasure of Ezzell's sexual

Page 2

gesture. Another employee, a Christine Henry, witnessed the pelvic grinding event and was willing to discuss it with management. Shortly thereafter, Ms. Henry was transferred to a different site.

13. In about the same time period, Ezzell held a site manager meeting, but excluded Maxey from the meeting while not excluding similarly situated non-black female managers.

14. Ezzell regularly complained in Maxey's presence about the fact that MCCAF employed black people, old people, and "fat people." He told other employees that there are three kinds of people not to hire; "1) fat people, because they are too slow, 2) old people, because they are too slow, and 3) black people, because they cause too many problems."

15. MCCAF paid the black employees at Maxey's site less than similarly situated non-minority employees. The majority of the employees at the site Maxey managed were black, but had long experience and understanding of the programs purpose and design. Often, MCCAF would have its new employees train at Maxey's center. The new employees, including those who were younger and white, would then get transferred to other sites and often be paid more than the experienced staff at Maxey's center.

16. In early 2012, Maxey complained to MCCAF director Bree Long about the pay difference to minority employees. MCCAF's immediate reaction to Maxey's complaints was anger, but soon thereafter Long agreed that MCCAF would increase the pay of the employees at the site Maxey managed. This pay rate increase never actually happened, but was only offered to appease Maxey temporarily.

17. Shortly thereafter, in April of 2012, Ezzell insisted that Maxey fire two black male employees but gave no reason other than that they were black. Maxey refused to fire them and confronted Ezzell about her belief that he only wished to fire them because they were in bi-racial

relationships with non-black women. Ezzell did not deny Maxey's allegations, but continued insisting that she fire the black men. Maxey continued to protest, explaining that these particular employees were among her most useful and that there was no legitimate reason to fire them. Ezzell then told Maxey that if she would not fire the men, he would "bring down the pressure" on her.

18. At about the same time, Maxey was approached by a member of the Eastern Oklahoma Development District, which directed the funding for MCCAP's programs. The EEOD representative wanted to inquire of Maxey about several complaints of which he became aware regarding Mr. Ezzell and MCCAF. Long, the MCCAF director, then issued a statement telling employees not to talk to EEOD representatives.

19. Maxey regularly complained internally of the treatment to which she and her fellow employees were subject. However, she had avoided filing a formal complaint for fear that MCCAP would retaliate against her.

20. In the first few days of May, 2012, after enduring many offenses, at least three aggrieved MCCAF employees, Maxey among them, filed internal grievances at MCCAF.

21. Based upon the grievances filed by Maxey and other MCCAP employees Ezzell was suspended for five days without pay and allegedly "removed" from his position as deputy director of MCCAP on or about June 18, 2012. However, Ezzell remained on staff with MCCAP at his same compensation rate and continued to assert supervisory roles over employees, including Maxey.

22. After Maxey's formal grievance, MCCAP reduced her pay, changed her title and removed from her certain responsibilities, including specifically a program that Maxey had helped MCCAF start. The position was given to a young white female.

23. Due to the grievances against Ezzell and local government pressures MCCAF resigned from the contract for Senior Nutrition Services effective August 31, 2012.

## COUNT I: MCCAF'S INFLICTION OF MENTAL AND EMOTIONAL DISTRESS

24. MCCAF owed the plaintiff a duty of care during the plaintiff's employment period with the MCCAF, including the duty to avoid inflicting upon her emotional distress by the manner in which the MCCAF operated its business and in the manner of continuing or discontinuing the plaintiff's employment.

25. Throughout her employment with MCCAF, the plaintiff was confronted with the MCCAF's improper business practices, including a violation of statutes.

26. As a result of the MCCAF's breach of its duty of care to the plaintiff, the plaintiff suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries, for all of which she should be compensated.

27. MCCAF's actions were reckless, entitling the plaintiff to punitive damages.

## COUNT II: MCCAF'S VIOLATION OF PUBLIC POLICY

28. MCCAF wrongfully acted adversely to the plaintiff's employment in violation of various public policies of the State of Oklahoma.

29. Among the other things as identified elsewhere in this *Petition*, MCCAF reduced the plaintiff's compensation in retaliation for her complaints, formal and otherwise, about the unlawful and discriminatory treatment she and others experienced at MCCAF. Taking adverse employment actions in retaliation for reporting sexual harassment, gender discrimination, and workplace violence violates a clear mandate of Oklahoma public policy.

30. By the aforesaid acts and omissions of MCCAF, the plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of earnings and future earning capacity, attorneys' fees, costs of suit and other pecuniary loss not presently ascertained, in an amount to be proved at trial.

31. As a further direct and legal result of the acts and conduct of MCCAF, the plaintiff has been caused to and did suffer and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, and anxiety.

32. MCCAF, by engaging in the aforementioned acts and in authorizing and ratifying such acts, engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of the rights and welfare of the plaintiff, thereby justifying the award of punitive and exemplary damages in an amount to be determined at trial.

## COUNT III: MCCAF'S BREACH OF IMPLIED CONTRACT

33. The plaintiff and MCCAF entered into an implied unilateral contract whereby MCCAF's personnel manual and other mandatory employment documents acted as offers for a unilateral contract accepted by the plaintiff's action to continue working for MCCAF.

34. MCCAF breached the contract by acting adversely regarding the plaintiff's employment in contravention of the implied unilateral contract the manner of operating MCCAF's business and in the manner of continuing or discontinuing the plaintiff's employment.

35. The plaintiff has performed all conditions precedent to recover under the contract and has not excused MCCAF's breach.

36. As a result of MCCAF's breach of the implied unilateral contract, the plaintiff has sustained damages including but not limited to the amount of lost earnings and employment benefits and the amount of damages for mental and emotional distress or anguish.

## COUNT IV: MCCAF'S GENDER DISCRIMINATION

37. MCCAF's actions described herein were intentional and demonstrate differing employment standards for similarly situtuated male employees and the plaintiff, who is a female.

38. The plaintiff was performing her job at a level that rules out the possibility that she was fired for inadequate job performance.

39. The actions of the employer and standards as described herein were adverse to the plaintiff's employment situation and status. MCCAF's demotion of the plaintiff and reduction in her pay was without sufficient justification and grossly disproportiant to any perceived misconduct and was discriminatorily different than cponsequences suffered by her supervisor.

40. Such adverse employment actions were in violation of the Civil Rights Act.

41. As a result of MCCAF's actions, the plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

## COUNT V: MCCAF'S ENDORSEMENT OF SEXUAL HARASSMENT

42. The harrassment to which the plaintiff was subjected in her employment as described herein was unwelcome, sexual in nature and motivated, at least in part, by her gender.

43. The harassment affected a term, condition, or privilege of her employment.

44. MCCAF knew or should have known of the harassment and failed to take prompt remedial action.

45. Such harassment was in violation of the Civil Rights Act.

46. As a result of MCCAF's actions, the plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering,

mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

## COUNT VI: MCCAF'S AGE DISCRIMINATION

47. MCCAF's actions described herein were intentional and demonstrate differing employment standards for similarly situtuated employees and the plaintiff, who is in the class of people protected by the ADEA.

48. The harrassment to which the plaintiff was subjected in her employment as described herein was unwelcome and motivated, at least in part, by her age.

49. The harassment affected a term, condition, or privilege of her employment.

50. MCCAF knew or should have known of the harassment and failed to take prompt remedial action. Such harassment was in violation of the ADEA.

51. As a result of MCCAF's actions, the plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

## COUNT VII: VIOLATION OF 42 U.S.C. § 1981

52. The defendants' actions were discriminatory as to the plaintiff. The defendants unfairly treated and acted adversley to the plaintiffs, at least in part because of her race.

53. The defendants' actions as described herein interfered with the plaintiff's rights in the making, performance, modification, and termination of contacts, and the enjoyment of all benefits, privileges, terms, and condition of her contractual relationship.

54. As a result of defendants' actions, the plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering,

mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

55. The defendants have engaged in intentional discrimination and have done so with malice or reckless indifference to the federally protected rights of the plaintiff.

## COUNT VIII: RETALIATION FOR EXERCISE OF RIGHTS

56. The plaintiff was engaged in activity protected by the Civil Rights Act and the ADEA when she was complaining, either formally or otherwise, about discriminatory treatment and harassment in the workplace. Likewise, as also described herein, the plaintiff's activities were protected when complaing about the treatment to which she and other employees were subject.

57. The defendants knew of the plaintiff's exercise of her civil rights and, thereafter, the took an employment action adverse to the plaintiff as described herein.

58. The defendants took adverse employment actions against the plaintiff in response to her excersice of her rights as described herein.

59. Such retaliation was in violation of the Civil Rights Act.

60. As a result of the defendants' actions, the plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

## COUNT IX: EZZELL'S NEGLIGENCE

61. Due to Ezzell's actions Maxey has suffered emotional distress, physical illness, and physical harm.

62. As Maxey's employment supervisor and as an individual Ezzell had a duty not to harm or injure Cotner.

63. Ezzell failed to exercise ordinary care to avoid injury to Maxey's person and negligently caused injury to Maxey through his actions.

64. Ezzell's actions committed against Maxey were negligent and were the direct cause of Maxey's injury.

## COUNT X: EZZELL'S INFLICTION OF EMOTIONAL DISTRESS

65. Over the course of four years Ezzell continuously and systematically inflicted severe emotional distress upon the plaintiff through his intentional and deliberate actions as well as through his negligence.

66. All of Ezzell's actions committed against the plaintiff occurred in what should have been a professional office setting for a non-profit organization. Instead Ezzell created a hostile and abusive work environment in which the plaintiff was in constant fear of termination, unwanted sexual advances, assault and battery, and racial discrimination.

67. Some of Ezzell's actions (e.g. touching his pelvic region to Maxey's back side and regularly making racial slurs and other cruel remarks about Maxey's co-workers), were extreme and outrageous and went beyond all possible bounds of decency. These actions of Ezzell were atrocious and utterly intolerable in a civilized society. Those of Ezzell's actions and conduct towards Maxey in what should have been a "professional" office setting intentionally and recklessly caused severe emotional distress to the plaintiff beyond that which a reasonable person could be expected to endure.

68. The plaintiff suffered severe emotional distress due to the actions of the Ezzell including physical illness and harm, mental anguish, worry, anger, and fright.

69. As Maxey's supervisor and as an individual Ezzell had a duty to protect the plaintiff from injury and to not cause harm or injury to the plaintiff.

70. When not acting to intentionally cause Maxey harm, Ezzell failed to exercise ordinary care to avoid injury to Maxey and negligently caused injury in the form of emotional distress to Maxey through his actions.

71. Ezzell's negligence regarding Maxey's emotional distress was a direct cause of Maxey's injuries.

72. Due to Ezzell's negligence Maxey has suffered emotional distress, mental anguish, and physical illness.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays that this Court award:

A. Judgment against MCCAF for actual and punitive damages for the emotional distress it caused the plaintiff;

B. Judgment against MCCAF for actual and punitive damages for its adverse employment actions in contravention of Oklahoma's public policy;

C. Judgment against MCCAF for actual and punitive damages for the its breach of implied contract;

D. Judgment against the MCCAF for gender discrimination in violation of the Civil Rights Act;

E. Judgment against the MCCAF for allowing and/or endorsing the plaintiff's sexual harassment in violation of the Civil Rights Act;

F. Judgment against the MCCAF for age discrimination in violation of the ADEA;

G. Judgment against the defendants for violation of the Title 42 U.S.C. §§ 1981 and 1981a;

H. Judgment against the defendants for retaliating against the plaintiff in violation of the Civil Rights Act and/or the ADEA;

I. Judgment against James Ezzell for the negligent physical harm he caused the plaintiff;

J. Judgment against James Ezzell for actual and punitive damages for the emotional distress he inflicted on the plaintiff, intentionally and negligently;

K. Judgment against the defendants for the costs of litigation, including a reasonable attorney's fee;

L. Any and all other relief as this Court deems appropriate according to equity, justice and the evidence presented.

Respectfully submitted,

/s/ Anthony L. Allen

Anthony L. Allen    OBA# 19738
ALLEN & WISNER
101 W. Broadway
Muskogee, Oklahoma 74401
918.683.5291
918.683.3397 fax
anthony@oklahomaslawfirm.com

*Attorney for the Plaintiff*